# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JIM SOLSBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04 C 3611 |
| | ) |
| CHICAGO SUN-TIMES, also known | ) |
| as HOLLINGER INTERNATIONAL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Jim Solsberry was employed by defendant Chicago Sun-Times as a pressman from September 1999 until September 2004, when he was terminated. Solsberry, who is African-American, alleges that he was subjected to a racially hostile work environment in violation of 42 U.S.C. § 1981; that he was disciplined, suspended, and terminated based on his race, and in retaliation for complaining about discrimination, in violation of § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. The Sun-Times has moved for summary judgment. The Court considers the evidence in the light most favorable to Solsberry, drawing reasonable inferences in his favor, and assesses whether there is any genuine issue of material fact and whether the Sun-Times is entitled to judgment as a matter of law.

Solsberry cites several incidents in support of his claim that he was subjected to a hostile work environment. Solsberry also says that co-worker David Lesney called him a "black ass" in November 2001; co-worker Lars Nygren said in Solsberry's presence in December 2001 that "everybody ought to own two or three of y'all"; in January 2002 co-worker Leon Sterner told

Solsberry he should have reported Lesney and Sterner to the union, not management; in April 2002 co-worker Ray Kroeschel used the word "n-----" to refer to another African-American co-worker who was working in the area; in February 2003, co-worker Donald Franklin told plaintiff that he had "two or three minutes to get [his] black cherry ass out there." Solsberry also says that David Lesney continued to bother him following his complaint to management about Lesney. Finally, Solsberry says that in October 2001, Ted Rilea, a supervisor, stated during another employee's grievance meeting that "I am guilty of being a racist, but all of my friends are black."

Solsberry was terminated in February 2001. He was reinstated following a grievance pursued by his union, on the condition that he sign a "last chance agreement" in which he agreed to abide by all company rules and policies and treat his supervisors and co-workers with courtesy. In September 2002, Solsberry received a warning for failure to follow directions and then lying about his activities, and another warning for interfering with pressroom operations. In January 2003, Solsberry received a warning for inappropriately shutting down a printing press. In May 2004, he was warned for leaving his work area unattended, and on a separate occasion for inappropriately shutting down a press. On the latter occasion, when he was advised by a co-worker that his action (pressing the "E-Stop Button") was improper, Solsberry threatened to, and evidently did, report the matter to OSHA. OSHA thereafter conducted an investigation of the Sun-Times E-Stop practices. Later in May 2004, Solsberry was warned for riding the press transfer table. He was suspended for the May 2004 violations.

On September 1, 2004, Solsberry left his press while it was running to address what he thought was a violation of the collective bargaining agreement. A meeting was held several days later, attended by Solsberry and union and company representatives, to discuss this incident.

Solsberry said he had left someone at the press but did not recall who it was. On September 17, 2004, the Sun-Times sent Solsberry a letter terminating his employment. The letter cited the last chance agreement and the subsequent warnings, and reference in particular a statement in one of the May 2004 warnings that "any future incident of misconduct or violation of company policy or procedures, including safety rules, will lead to your immediate termination." Ex. 35. The letter went on to state that despite this warning, Solsberry had violated work rules by leaving his press without getting permission and without anyone to relieve him, and that he had lied when confronted about this.

## Discussion

### 1. Hostile work environment claim

The standard by which a court assesses a claim of a racially hostile work environment depends in part on whether the hostile conduct came from supervisors or co-workers. Solsberry contends his claim should be assessed under the more stringent standard that applies to claims of supervisory hostility because David Lesney was a supervisor. Based on Solsberry's admissions during discovery, however, it is undisputed that Lesney, an hourly union worker who held a position called "man in charge," had no authority to hire, fire, promote, discipline, or effectively recommend discipline of Solsberry. Accordingly, he was not Solsberry's supervisor for purposes of determining the applicable standard. *See Hall v. Bodine Electric Co.*, 276 F.3d 345, 355 (7th Cir. 2002); *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998).

The Court therefore considers Solsberry's racial harassment claim to determine whether he has presented evidence from which a jury reasonably could find that he was subjected to unwelcome harassment based on his race, which was so severe or pervasive as to alter the

3

conditions of his work environment by creating a hostile or abusive situation, and that there is a basis for imposing liability on the Sun-Times. *See, e.g., Smith v. Northeastern Illinois Univ.,* 388 F.3d 559, 566 (7th Cir. 2004). Liability may be imposed upon an employer for racial harassment by co-workers if the employer is negligent in discovering or remedying the harassment. *Williams v. Waste Management of Illinois, Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004). If the employer, in response to a complaint about harassment, takes prompt and appropriate corrective action reasonably likely to prevent the harassment from occurring, then it is not liable. *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978 (7th Cir. 2004).

Based on the facts conceded by Solsberry, no reasonable jury could find that the Sun-Times' actions were inadequate. The company had a policy prohibiting harassment and discrimination that was in effect at all relevant times and that was distributed several times to workers at the facility where Solsberry was employed. It also conducted anti-harassment and anti-discrimination training in the fall of 2002, which was attended by all management and union workers at the facility. In response to Solsberry's complaints regarding the incidents referenced earlier, the Sun-Times investigated; in several instances it disciplined or warned the individuals involved; and with the exception of Lesney there were no further incidents of any sort involving any of them. With regard to Lesney, the Sun-Times separated him from Solsberry, and no further racial harassment occurred.

The undisputed evidence shows that the Sun-Times responded promptly and effectively to each of Solsberry's complaints and otherwise acted reasonably in attempting to prevent workers from harassing others. Because it took reasonable steps to discover and rectify harassment, the Sun-Times cannot be held liable. *See Berry v. Delta Airlines, Inc.,* 260 F.3d 803,

4

811 (7th Cir. 2001). For this reason, the Court need not address the other arguments advanced by the Sun-Times on this claim.

## 2. Race discrimination claim

With regard to Solsberry's claim of racially disparate treatment in discipline and termination, he offers no direct evidence of discrimination, so he must proceed by the so-called indirect method of proof. A plaintiff proceeding under the indirect method must show that he was a member of a protected class, was performing his job satisfactorily, was subjected to an adverse employment action, and similarly situated persons outside his class were treated more favorably. *See, e.g., Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003). With regard to his suspension, Solsberry actually contends that it took place in retaliation for his OSHA complaint, not due to his race. With regard to his termination, Solsberry has offered no evidence whatsoever of differential treatment of similarly situated workers who were not African-American. Indeed, Solsberry admits that just seven days after his termination, a white employee was likewise terminated for a similar incident. This is the antithesis of differential treatment. For these reasons, no reasonable jury could find in Solsberry's favor on his claim of race discrimination.

## 3. Retaliation claim

Solsberry's final claim is his claim of retaliation for complaining about race discrimination and harassment. His claim regarding his suspension fails for the reasons discussed in the preceding paragraph, leaving only his claim regarding his termination. A plaintiff who engaged in protected activity, as Solsberry did, can sustain a claim of retaliation under the direct method of proof by showing a causal connection between his protected activity

5

and an adverse action. A plaintiff can also proceed under the indirect method to establish a *prima facie* case of retaliation by showing that he was performing his job satisfactorily but suffered an adverse action, and that others who did not engage in protected activity were treated better. If the plaintiff establishes these elements, the burden shifts to the employer to articulate, if it can, a non-retaliatory reason for its actions. If the employer does so, the employee then bears the burden of showing that the employer's reason is a pretext for discrimination, such as by showing that it is not worthy of credence. *See, e.g., Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005).

Solsberry cannot make out a retaliation claim under the direct method. The only evidence he offers of a causal connection is temporal proximity, but the nine-week interval between his last complaint and his termination is insufficient as a matter of law to make such a connection. *See EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 952-53 (7th Cir. 2001).

In attempting to sustain his claim under the indirect method, Solsberry offers testimony that other workers who had not complained left their presses on occasion but were not disciplined. In his statement of material facts submitted in opposition to defendant's motion, Solsberry cites the testimony of two workers, Robert Rotkovich and Willie Lott. *See* Pltf. LR 56.1 Stmt. ¶¶ 225-26. Rotkovich, however, cited only incidents where the worker's press was, in fact, covered by someone else when the worker left it. *See* Rotkovich Dep. 149. And Lott cited no incidents in which management knew a worker had left his press unattended. *See* Lott Dep. 38-39. Without more, this is not evidence from which a jury reasonably could find that workers who had not made complaints were treated differently from Solsberry. In short, Solsberry cannot sustain a *prima facie* case of retaliation under the indirect method.

Solsberry also contends that contrary to the Sun-Times' stated reason for his termination, he left his press covered by another worker, Donald Nole. But if Solsberry cannot sustain a *prima facie* case, as the Court has concluded, the veracity of the Sun-Times' stated reason for its action is not placed at issue. Even if, however, Solsberry had been able to sustain his *prima facie* burden, his contention regarding Nole would be insufficient to permit a jury to find that the Sun-Times' reason for terminating him was a pretext for retaliation. The issue in that regard is not what Solsberry can show now, but what the Sun-Times honestly believed at the time. At the time of Solsberry's termination (September 17, 2004), it is undisputed that Solsberry had been unable to identify anyone who had watched his press after he left – Nole came forward only later (his statement is dated September 24, 2004). Under the circumstances, Solsberry has not offered evidence from which a jury reasonably could find that the Sun-Times' stated reason was pretextual.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket # 36-1]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 9, 2006 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 14, 2005